HERMAN LOEWENSTEIN *v.* UNITED STATES (No. 4004)[1]

United States Court of Customs and Patent Appeals, November 2, 1936

*Allan R. Brown* and *Fred J. Carter* (*Eugene F. Blauvelt* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *John J. McDermott*, special attorneys, of counsel), for the United States.

[Oral argument October 12, 1936, by Mr. Blauvelt and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The present appeal involves certain grained calf leather in various colors, imported under the Tariff Act of 1930 at the port of New York. It was returned for duty as grained and decorated fancy leather at 30 per centum ad valorem, under subparagraph (d) of paragraph 1530 of said tariff act. The importer protested, claiming the goods to be dutiable under paragraph 1530 (c) at 10 per centum ad valorem—

or only 25% ad val., or at only 15% ad val., by virtue of the Presidential Proclamation published in T. D. 44603, or Par. 1530 (b) (4), or Par. 1530 (b) (7) at only 15% ad val., or Par. 1530 (b) (1), (2), or (3) at only 12½% ad val., or Par. 1530 (b) (5) or (6) at only 20% ad val.

Five protests were filed which have been consolidated in the court below for purposes of trial. The issues are the same in each protest. While these several claims were made in the protests, counsel for the importer stated, in opening his case before the trial court, that the claim relied upon was under said paragraph 1530 (b) (4), namely,

side upper leather (including grains and splits), patent leather, and leather made from calf or kip skins, rough, partly finished, or finished, or cut or wholly or

[1] T. D. 48641.

partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear, 15 per centum ad valorem.

The trial court overruled the protest in each instance and the importer has appealed.

The relevant portions of the statute are as follows:

PAR. 1530. (d) Leather of all kinds, grained, printed, embossed, ornamented, or decorated, in any manner or to any extent (including leather finished in gold, silver, aluminum, or like effects), or by any other process (in addition to tanning) made into fancy leather, and any of the foregoing cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear, all the foregoing by whatever name known, and to whatever use applied, 30 per centum ad valorem.

PAR. 1530. (b) Leather (except leather provided for in subparagraph (d) of this paragraph), made from hides or skins of cattle of the bovine species;

\* \* \* \* \* \* \*

(4) side upper leather (including grains and splits), patent leather, and leather made from calf or kip skins, rough, partly finished, or finished, or cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear, 15 per centum ad valorem; \* \* \*.

Two varieties of leather were imported, both of which were of the bovine species. One of these, known as Black Moor calf, was assessed for duty at 15 per centum ad valorem, and no protests were filed as to such items. The balance of the importations were known as kip leather. This leather was of several different prints, but all of the same type, and was described on the invoice as "grain kip sides." A sample of the same is in evidence. It shows the merchandise in question to be upper side leather, which is used for the uppers of men's shoes. It admittedly has an artificial grain. According to the evidence, the skins are first limed to take off the hair, then they are tanned and colored. Following this, they are staked; that is, softened and spread out. Thereafter the hides are salted and sold, and the last stage in the process is to put an artificial grain upon them, which is done after the dying and staking. The graining is produced by placing the leather on a steel plate and subjecting the same to heat, and pressure of another steel plate. This pressure produces an impression upon the grain side of the leather, according to the particular dies which are used in pressing the same. The name ordinarily applied to the leather when finished is that of "Scotch grain," and it is testified by the importer that while plain leather of this variety is merchantable, the shoe manufacturing trade requires the same to be grained before it is saleable as side upper leather.

The importer admitted, while on the witness stand, that the leather was printed, embossed, or grained. It was also shown in the evidence that finer grained hides were used for a smooth finish in shoe uppers without further graining, but that this species of leather required graining.

It was shown by the testimony of the witness Moe H. Garfinkle, a witness called by the Government, that the terms "grains" and "splits" included the two parts of a piece of leather which had been split, the flesh side of the hide being known as the "split" and the hair side as the "grain," and that both of these parts of the leather have a natural grain. It also appears that the leather here involved has not been split.

It is contended by counsel for the appellant that the imported leather is not "fancy leather" within the intent and language of paragraph 1530 (d), and that it is more specifically provided for in paragraph 1530 (b) (4), even if it be fancy leather, as—

side upper leather (including grains and splits), * * * and leather made from calf or kip skins, rough, partly finished, or finished, or cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear * * *.

It is further contended that said paragraph 1530 (b) (4)—

specifically covers grained upper leather and also grained leather made from calf or kip skins where, as in the present case, it is shown that the graining is necessary in order to finish the leather for its use.

To our minds the matter is settled by our decision in *United States* v. *John B. Stetson Co.*, 21 C. C. P. A. (Customs) 3, T. D. 46319. In that case we had before us grained sheepskin leather, classified under said paragraph 1530 (d). On the trial, the importer claimed it to be dutiable under paragraph 1530 (c) of said act, as "finished" leather. The protest was sustained, and, on appeal to this court, we reversed the decision of the trial court. These contentions were made on the hearing: first, the importer contended that the imported leather was leather, finished, and was included within the classification made by said paragraph 1530 (c). On the other hand, the Government contended that the imported leather was grained, and, hence, that it was specifically mentioned in, and classifiable under, said paragraph 1530 (d). As an ancillary question, the importer claimed that any leather, to be properly classifiable under said paragraph 1530 (d), must be "fancy"; that the imported leather was not commercially or commonly known as "fancy" leather, and, therefore, could not come within said paragraph 1530 (d).

We discussed at length these contentions, especially the wording of said paragraph 1530 (d), and used the following language:

We are unable to agree with the view of counsel for the appellee in their construction of the language of said paragraph 1530 (d). Here we find an enumeration of several kinds of leather which are to be classified thereunder, and these are designated *eo nomine*: Grained leather, printed leather, embossed leather, ornamented leather, and decorated leather. If the involved leather be of any one of these varieties it is within the subparagraph, because the Congress has so specifically provided. Nor can we agree with the view that the language "or by any other process (in addition to tanning) made into fancy leather," removes

"grained" leather from the subparagraph, unless it be also known as "fancy." The use of the language "or by any other process (in addition to tanning)" indicates plainly, in our view of the matter, that the Congress, having enumerated what it considered to be fancy leather, was providing a general clause which would make it possible to include therein any leathers made fancy, by any other process than those already enumerated. To hold otherwise would be to make it possible to remove any leather, such as "embossed," for example, from the purview of the subparagraph by proof that it was not commercially or commonly known as "fancy" leather.

"Or by any other process," in its ordinary grammatical construction as a part of the sentence in which it is found, obviously refers to any other process than graining, printing, embossing, ornamenting, or decorating, as there are no other antecedents to which the phrase may grammatically refer.

In other words, the Congress has by this subparagraph named "grained" leather as one variety of fancy leather for tariff purposes.

Pursuant to this discussion we held the imported goods to be within the purview of said paragraph 1530 (d) rather than as contended by the importer.

We can see no distinction in principle between that case and the one now at bar. Here the leather is admittedly grained, printed, or embossed. If so, it is, within the ruling in the *Stetson* case, *supra*, "fancy leather," and, as such, it is more specifically enumerated than as provided in said paragraph 1530 (b) (4), as "side upper leather."

We are unable to see how said paragraph 1530 (b) (4) can be considered as any more specific than paragraph 1530 (c), which was involved in the *Stetson* case, *supra*, and which we said there must yield to a classification under said paragraph 1530 (d).

It is contended, however, by counsel for the importer, that the imported leather is not "fancy leather" within the decision of this court in *United States* v. *Pacific Binding Library Co.*, 22 C. C. P. A. (Customs) 641, T. D. 47617. In that case, certain goat skins were imported and classified under said paragraph 1530 (d) as "fancy leather." This leather was colored morocco leather, cut from whole tanned goat skins. The issue was whether or not the leather had been grained within the meaning of said paragraph 1530 (d). The Government contended that it had been grained and made into fancy leather. This court held that the only grain on the leather was a natural grain, and that it had not been grained as provided in said paragraph 1530 (d), but only stretched, dyed, and specially prepared for bookbinding use. The only witness in the case testified that the leather was plain. This court cited the *Stetson* case, *supra*, and discussed the Summary of Tariff Information, 1929, in an attempt to determine whether the imported leather was or was not fancy leather. It admittedly was not grained, printed, embossed, ornamented, or decorated, as is provided in said paragraph 1530 (d). That case was decided on the point that the importer had not estab-

lished, by the record, that the classification of the collector was erroneous, and it cannot be said to throw any particular light on the question now presented to this court.

It is argued by counsel for the appellant that said paragraph 1530 (b) (4) is a classification by use, and is, therefore, more specific in describing the imported merchandise than is said paragraph 1530 (d). The difficulty with this argument is that said paragraph 1530 (d) has a provision at the end thereof, as follows: "* * * all the foregoing by whatever name known, and to whatever use applied, 30 per centum ad valorem." This, we believe, is decisive of the matter.

The judgment of the United States Customs Court is *affirmed*.